IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| THE BAR PLAN MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) Cause No: |
| v. | )<br>) |
| LAW OFFICES OF KRISTIN FECTEAU, PLLC, | )<br>)<br>) |
| and | )<br>) |
| KRISTIN FECTEAU, | )<br>) |
| and | )<br>) |
| LATIF ABDELSAYED, | )<br>) |
| and | )<br>) |
| AFAF HANNA, | )<br>) |
| Defendants. | ) |

## DECLARATORY JUDGMENT COMPLAINT

COMES NOW, The Bar Plan Mutual Insurance Company, by and through its undersigned counsel, and asks this Court for a declaratory judgment in its favor and against the Law Offices of Kristin Fecteau, PLLC, Kristin Fecteau, Latif Abdelsayed, and Afaf Hanna for the reasons that are set forth below:

## NATURE OF THE CASE

1. The Bar Plan Mutual Insurance Company ("The Bar Plan") seeks a judicial determination of its rights and duties, if any, under a lawyer's professional liability insurance policy that it issued to the Law Offices of Kristin Fecteau, PLLC with the

Policy Number 14585-2014, which has effective dates of July 1, 2014 to July 1, 2015 ("Policy"). *See* re-dacted **Exhibit 1** attached hereto, Policy.

2. Specifically, The Bar Plan seeks a determination that it owes no duty to defend and/or indemnify Law Offices of Kristin Fecteau, PLLC, and Kristin Fecteau against any demands that their former clients, Latif Abdelsayed, and Afaf Hanna, have made in the suit styled *Abdelsayed and Hanna v. Fecteau*, with the case number 15C2358, which is currently pending in the Circuit Court of Davidson County, State of Tennessee ("Underlying Case").

## PARTIES

3. The Bar Plan is a Missouri insurance company in good standing with its principal place of business located in St. Louis County, Missouri.

4. Kristin Fecteau ("Fecteau") is a Tennessee resident who is licensed to practice law in the State of Tennessee.

5. Law Offices of Kristin Fecteau, PLLC ("Fecteau Firm") is a Tennessee professional limited liability company with its principal place of business located in Davidson County, State of Tennessee, and whose sole member is Fecteau, who is a Tennessee resident.

6. At all times mentioned herein, Fecteau acted in her capacity as an agent of the Fecteau Firm.

7. Latif Abdelsayed is an adult citizen of Davidson County, State of Tennessee. Afaf Hanna is an adult citizen of Davidson County, State of Tennessee. At

all times herein, Latif Abdelsayed and Afaf Hanna are collectively referred to as the "Claimants."

## JURISDICTION AND VENUE

8. There is complete diversity of citizenship between Plaintiff and all of the Defendants.

9. The amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

11. This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 and Rule 57, FRCP.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## POLICY

13. The Fecteau Firm is the Policyholder and Fecteau is a named insured under the Policy.

14. The Policy is a "claims made" policy which provides as follows:

    I.    **DEFINITIONS** Whenever used in this Policy:

    ****

D.  "**CLAIM**" means: Receipt by an Insured of a demand for money or services (including the service of suit or the institution of arbitration proceedings) against the Insured from one other than that Insured.

****

II.  **COVERAGE**

A.  **PROFESSIONAL LIABILITY AND CLAIMS-MADE AND REPORTED CLAUSE:**

The Company will pay on behalf of an Insured all sums, subject to the Limit(s) of Liability, Exclusions and terms and conditions contained in this Policy, which an Insured shall become legally obligated to pay as Damages as a result of CLAIMS (INCLUDING CLAIMS FOR PERSONAL INJURY) FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENSION PERIOD COVERAGE AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD, THE AUTOMATIC EXTENDED CLAIM REPORTING PERIOD, OR ANY APPLICABLE EXTENSION PERIOD COVERAGE by reason of any act or

4

omission by an Insured acting in a professional capacity providing Legal Services.

**PROVIDED ALWAYS THAT** such act or omission happens:

1. During the Policy Period; or
2. Prior to the Policy Period, provided that prior to the effective date of this Policy:
   a. Such Insured did not give notice to the Company or any prior insurer of any such act or omission; and
   b. Such Insured had no basis to believe that such Insured had committed such an act or omission.

**NOTE:** It is a condition precedent to coverage under this Policy that all Claims be reported in compliance with Section VII. CLAIMS, Paragraph A.

****

THIS POLICY DOES NOT PROVIDE COVERAGE FOR ANY CLAIM BASED UPON OR ARISING OUT

5

OF:

    A.    Any dishonest, deliberately fraudulent, criminal, malicious or deliberately wrongful acts or omissions by an Insured; however, the Company will provide a defense for any Claim alleging such acts or omissions by an Insured acting in a professional capacity providing Legal Services, subject to Section II. COVERAGE, Paragraph B. 3., but the Company will not pay any sums the Insured shall become legally obligated to pay as Damages for any such Claim. This exclusion is waived with respect to each Insured who did not know of, or participate or acquiesce in, the act or omission, but then only to the extent that the act or omission underlying the Claim for Damages does not relate to or arise out of the defalcation by any Insured under this Policy of money or property maintained by the Policyholder or any Insured in trust, escrow, or other safekeeping for the account or benefit of any claimant or other party. However, under no circumstances will the Company provide a defense for any criminal prosecution.

                ****

6

Case 3:15-cv-00887   Document 1   Filed 08/13/15   Page 6 of 13 PageID #: 6

L. A Claim against an Insured who before the Policy effective date knew, or should reasonably have known, of any circumstance, act or omission that might reasonably be expected to be the basis of that Claim.

****

## IX. OTHER CONDITIONS

### A. APPLICATION:

By acceptance of this Policy, all insureds agree that the representations in the Declarations Letter and Application (including all supplements) attached here to and hereby made part of this Policy are true and complete to the best of the Knowledge of all Insureds. This Policy issued in reliance upon the truth of such representations and all insureds confirm that no facts have been suppressed or misstated. This Policy embodies all agreements existing between the Insureds and the Company and any agents of the Company relating to this Policy.

****

15. The Fecteau Firm's application for the Policy asked, "After the inquiry of each lawyer named in the firm,…. Does the Firm or any attorney or employee in the Firm have knowledge of any incident, circumstance, act or omission, which may give rise to a claim not previously reported to us?"

7

16. The Fecteau Firm answered the preceding question by checking the box indicating "no."

17. The Fecteau Firm had never reported the facts giving rise to the Underlying Case to The Bar Plan prior to applying for the Policy.

## CLAIM AGAINST THE INSUREDS

18. The Claimants sued Randal and Sue Hand (collectively referred to herein, as the "Hands") in Circuit Court of Davidson County, State of Tennessee, in a suit assigned case number 11C-927, seeking rescission of a gas station sale and return of the purchase price.

19. Fecteau began to represent Claimants while their case against the Hands was already pending.

20. Fecteau obtained a judgment rescinding the sale and ordering the Hands to repay the purchase price due to fraudulent misrepresentations made by the Hands, and successfully defended the judgment on appeal.

21. However, prior to the judgment becoming final upon remand, the Hands filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court, Middle District of Tennessee, bankruptcy case number 3:13-bk-02857.

22. Fecteau sent the Hands' bankruptcy attorney a letter as an attachment to an email on April 2, 2013 stating since the judgment was for fraud, it should not be part of the bankruptcy.

23. The Hands' attorney responded on the same day stating: "You clearly are not familiar with bankruptcy law, which requires that this debt be scheduled and provided for. I read Judge Clement's opinion before this case was filed and have

8

discussed with my clients that this debt is likely not dischargeable per 11 USC § 523." The Hands' attorney then went on to say: "I will discuss with my clients giving you an agreed order granting relief from the automatic stay to the limited extent of allowing the Circuit Court judge to enter an order consistent with Judge Clement's. We also will likely enter an agreement that this debt is non-dischargeable based on the clear language in Judge Clement's opinion, as there appears to be no reason to litigate this further in Bankruptcy Court."

24. On July 1, 2013, a week before the July 8, 2013 deadline, Fecteau sent another email to the Hands' attorney with a letter attached. This letter from Fecteau stated:

> "Enclosed is the Judgment Order from the trial court. It clearly indicates that the Hands obtained this money by fraud. As such, my clients should not be included in the bankruptcy. Please let me know if you will voluntarily enter an Agreement as you stated in your April 2 email that this debt is not dischargeable pursuant to 11 USC 523, or whether I will need to file a Motion regarding whether this is a good faith filing of a debt."

25. Later that day, the Hands' attorney replied to Fecteau that Randal Hand had died, and the situation had changed dramatically for his remaining client. He went on to state: "I am meeting with Mrs. Hand later this week to discuss her options, but believe it is unlikely she will be able to continue running the market and funding this plan. I will respond when I have a chance to discuss this with my client."

26. On July 12, 2013, or 4 days **after** the relevant deadline to claim debts non-dischargeable in the bankruptcy had already passed, Fecteau followed up with the

9

Hands' attorney stating, "It has now been over a week, would you kindly update me on whether this judgment based on fraud will be voluntarily dismissed from the bankruptcy, or whether I will need to seek all remedies available in having this dismissed?" The Hands' attorney replied that he had met with Mrs. Hand the week prior and "she intends to go forward with her case. Your deadline to file a complaint has passed."

27. A tense exchange followed. The Hands' attorney admonished Fecteau, "If you had timely filed a complaint, then we would have capitulated without a fight. You did not."

28. In response, Fecteau stated: "You had already stated on April 2 you agreed this was not dischargeable per USC [sic] 11 USC 523 and had talked to your clients about it "at length"! You said you would get back to me. Why would I file a complaint when you were agreeing this was an improper debt? Have you intentionally misrepresented to me your agreement of a dismissal only to now argue "deadline"?

29. And finally, the Hands' attorney replied: "If you had filed a complaint, the debt would have been nondischargeable, no question about it. However, I repeat myself: you did not. You never proffered an agreed order or moved this along in any way. The notice with the deadline of 7/8/13 is very clear, and is attached. It is not my obligation to tell you how to practice law. My duty is to my clients."

30. On July 26, 2013, Fecteau filed a pleading in the bankruptcy court titled, Creditor Abdulsayed and Hanna Motion for Extension of Time to File Exception Pursuant to 9006(b)(1).

31. The motion sought leave to file out of time a pleading requesting that the Hands' debt to the Claimants based for rescission of the gas station sale was a non-dischargeable debt in the Hands' bankruptcy based upon the representations of the Hands' attorney to Fecteau stated above.

32. On September 6, 2013, Fecteau sent an email to the claimants stating she was hiring a bankruptcy attorney to represent them.

33. Fecteau admits she paid for this bankruptcy attorney, Mary Ausbrooks, with her own money.

34. The bankruptcy court denied the motion for an extension of time on September 11, 2013.

35. Fecteau and Mary Ausbrooks then appealed the decision to the District Court on behalf of Claimants.

36. However, the District Court denied the Claimants' appeal on December 1, 2014.

37. On June 18, 2015, Claimants filed the Underlying Case against Fecteau.

38. Count I is for negligence/legal malpractice for Fecteau having not timely filed a pleading in the Hands' bankruptcy seeking to have the Claimants' claim against the Hands for rescission of the gas station sale held a non-dischargeable debt.

39. Count II is for fraudulent misrepresentation based on Fecteau having concealed from Claimants her failure to timely file a pleading in the Hands' bankruptcy

seeking to have Claimants' claim against the Hands for rescission of the gas station sale held a non-dischargeable debt.

40. Fecteau and The Fecteau Firm first reported the facts giving rise to the Underlying Case to The Bar Plan in June of 2015.

## COUNT I

### (Declaratory Judgment)

41. The Bar Plan re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-40 above as if fully set out herein.

42. Reasonable lawyers with knowledge of the facts that Fecteau and The Fecteau Firm had prior to the Policy's July 1, 2014 effective date, would have known that Claimants might make a demand against Fecteau for her having failed to timely file a pleading in the Hands' bankruptcy seeking to have the Hands debt to Claimants held non-dischargeable.

43. Therefore, there is no coverage under the Policy's insuring clause and/or Exclusion L, which both preclude The Bar Plan from having a duty to defend and/or indemnify Fecteau and/or the Fecteau firm as to any judgment entered in the Underlying Case as Fecteau knew or should have known Claimants might make this claim prior to the Policy's effective date.

44. Exclusion A, which excludes indemnity coverage for claims based upon deliberate wrongdoing, but provides for a defense against said claims, precludes any indemnity coverage for a judgment entered on Count II in the Underlying Case as that Count alleges fraudulent misrepresentation.

WHEREFORE, The Bar Plan Mutual Insurance Company prays for declaratory relief as follows:

1. That it owes no duty to defend and/or indemnify Fecteau and/or the Fecteau Firm in the Underlying Case under the Policy's insuring clause and/or Exclusion L;

2. That it owes no duty to indemnity Fecteau and/or the Fecteau Firm for any judgment entered on Count II in the Underlying Case as Exclusion A precludes indemnity coverage for said judgment;

3. That The Bar Plan be awarded its attorneys' fees and costs of suit incurred herein; and

4. That the Court award such other and further relief it deems just and proper under the circumstances.

Respectfully submitted,

LEWIS, THOMASON, KING, KRIEG & WALDROP, P.C.

*Marisa Combs*
Marisa Lee Combs, BPR No. 024369
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219
(615) 259-1366
(615) 259-1389 (fax)
mcombs@lewisthomason.com

**Attorneys for Plaintiff**